574 A.2d 434

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. RUFUS
HUDSON AND RUSSELL SAMUEL HALL,
DEFENDANTS–RESPONDENTS.

Argued January 18, 1990—Decided May 30, 1990.

*Linda K. Danielson,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Frank J. Soltis,* Assistant Deputy Public Defender, argued the cause for respondent Russell Samuel Hall (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney; *Frank J. Soltis* and *Faye R. Puddington,* Designated Counsel, on the briefs).

*Philip A. Ross,* Designated Counsel, argued the cause for respondent Rufus Hudson (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney; *Philip A. Ross* and *Lennox S. Hinds,* Designated Counsel, on the briefs).

The opinion of the Court was delivered by

STEIN, J.

The question in this appeal is whether the convictions of two defendants who knew the date, time, and place of their joint trial should be vacated because they left the courtroom before trial commenced. At issue is the application of *Rule* 3:16, which provides in relevant part:

> The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by rule, but the defendant's voluntary absence after trial has commenced in his presence shall not prevent its continuing to and including the return of the verdict. * * *

Defendants had been released on bail, pending their trial. Both defendants were present in court on the morning of trial. The case, however, was adjourned until the afternoon, at which time defendants failed to appear. The trial court concluded that they had voluntarily absented themselves and ordered that jury selection begin. Defendants were tried and convicted *in absentia*.

The Appellate Division reversed both convictions, holding that "defendants disappeared before the trial commenced," and therefore "the 'voluntary absence' proviso of *R.* 3:16 [could not] be invoked." 226 *N.J.Super.* 412, 416, 544 *A.*2d 868 (1988).

We granted certification, 114 *N.J.* 509, 555 *A.*2d 626 (1989), and now reverse.

## I.

A Camden County grand jury returned separate indictments against the defendants, charging each with three counts of second-degree aggravated assault, contrary to *N.J.S.A.* 2C:12–1b(1); one count of second-degree possession of a handgun with the purpose to use it unlawfully, contrary to *N.J.S.A.* 2C:39–4a; and one count of third-degree possession of a handgun without a permit, contrary to *N.J.S.A.* 2C:39–5b. The charges arose from a shooting incident that occurred in November 1984.

The two cases were peremptorily listed for a joint trial on June 3, 1985. Both defendants appeared in court on June third. On that day, the court granted Hall's attorney a continuance so that he could review the grand jury transcript. The court informed both defendants that the new trial date was June 18, 1985, at 9:00 a.m.

The court called the matter for trial as scheduled on June 18th. Hudson and Hall were present in the courtroom at nine o'clock. The case was again delayed because Hall's attorney was involved in a different trial before another judge. The court informed the two defense attorneys to be ready for trial at 1:30 p.m. The attorneys met with their clients and told them to be in court at that time. Hall and Hudson remained in or near the courthouse for the rest of the morning.

At 1:30 p.m., Hall's attorney was granted an adjournment of his other trial. He then sought Hudson's attorney in order to finish preparing for Hall's defense. Counsel located Hall, Hudson, and Hudson's attorney in a conference room at the courthouse. The attorneys left defendants, conferred briefly in another room, then proceeded to the court's chambers.

Shortly before 3:00 p.m., the trial court requested that a panel of sixty potential jurors be brought into the courtroom to begin jury selection. Neither defense attorney was present at that time; the record is unclear whether either defendant was in the courtroom.

A short time later, counsel for Hall arrived and sought another continuance for additional time to prepare his client's case. At that point, the absence of defendants became apparent to the court:

THE COURT: If you want to make a motion I suggest you make it right now.

MR. KRAMER: Yeah. They had been here all day. They may have just stepped out to get something to eat.

THE COURT: Fine, because the jury's on its way.

MR. KRAMER: I think they got a buck fifty for something to eat.

THE COURT: This matter was called for trial this morning at 9:00. Defendants have been here all day, the court has been ready to move the matter, in fact, the jury has been sent for. The defendants were in court, were they not, sir?

MR. KRAMER: Yes, your Honor.

THE COURT: Yes, they have absented themselves voluntarily, there is no question about that. The court did not excuse them or suggest to them that they shouldn't remain. You may, therefore, proceed with your motion in the absence of the defendants since they themselves have absented themselves.

The court then heard and denied the motion for a continuance.

Court officers unsuccessfully searched the courthouse for defendants. Shortly thereafter, the jury panel entered the courtroom. The court ordered that jury selection begin and that the trial proceed without defendants. The court determined that defendants had "voluntarily absented" themselves from the case:

THE COURT: The record should reflect that it's ten after three. This case was listed for trial this morning at 9:00, pre-emptorily [sic] listed. Counsel has known that all day long. I'm not faulting counsel at all. Mr. Kramer was engaged in another trial and Mr. Supnick was advised to come in at 1:30. Likewise Mr. Kramer was alerted to be here at 1:30. Defendants should have been here. In fact, defendants were here at some time during the course of the day.

It isn't that so [sic], Mr. Supnick?

MR. SUPNICK: That is correct.

THE COURT: Am I right?

MR. KRAMER: That is correct, your Honor.

THE COURT: They were here, nobody excused them, at least the court didn't excuse them, and nobody ever advised anybody in this case that it would not move. The jury is here ready to be selected, the defendants are not here and the court finds as a matter of fact they've absented themselves voluntarily from the proceedings and in that case the matter may proceed in their absence. And it will do just that unless the prosecutor has objection.

MS. SPADEA: No objection, your Honor.

MR. KRAMER: Your Honor, at this time I guess the proper time [sic] would be to make a motion to ask for a continuance and if the court wishes to issue a bench warrant to do so, but I would like to have my client here.

MR. SUPNICK: I would join in that. I would like to have them here for a jury selection.

THE COURT: This is about the fourth time today that counsel has requested this matter go off. I'm beginning to start to wonder about the absence of these defendants. I don't know that it could be some type of ploy to bring the matter

to a point where the court might be forced to continue it. But that isn't going to work and it isn't going to happen. These men aren't here, there's no reason to issue a bench warrant. They have a right to be at their own trial and they have a right to absent themselves from their trial. They've obviously elected the latter and, therefore, we will proceed in their absence. Motion denied.

The court informed the potential jurors that defendants "[are] not with us right now, but we presume they will be with us tomorrow." However, efforts to locate either defendant during the trial were unsuccessful.

According to the evidence adduced at trial, a gang of several young men, including Hall and Hudson, chased three victims in the streets of East Camden. The gang confronted the victims in front of a house, and displayed handguns and a shotgun. Shots were fired, but no one was injured. Because of defendants' absence, the victims used photographs to identify Hall and Hudson as two of the gun-brandishing gang members.

The prosecutor and both defense attorneys noted in their summation the absence of defendants. The trial court instructed the jury not to attach any significance to the absence of defendants:

That I made clear and I will go over it again, but likewise there is no obligation on the part of a defendant to attend the trial. The defendant has every right to attend the trial if he elects to do so, but he likewise has a constitutional right if he decides to elect such right not to attend the trial. And the fact that in this case obviously the defendants elected not to attend the trial, that may not be used in determining their guilt or innocence. You may not draw any inferences of guilt from that fact. That fact should not enter into your deliberations whatsoever. It should in no way affect the presumption of innocence that every defendant is entitled to in every case.

The jury convicted both defendants on all counts. Because neither Hall nor Hudson could be located when the jury announced its verdict, the court revoked bail and issued bench warrants for their arrest.

On October 11, 1985, nearly four months after his trial, Hudson appeared for sentencing. At the sentencing hearing, Hudson explained to the court that he left the courthouse on June 18th because he "[j]ust got kind of shaken up a little bit." The court sentenced Hudson to a seven-year custodial term

with three years of parole ineligibility on count one, a concurrent seven-year term on count four, and a concurrent four-year term on count five. The court merged counts two and three with count one.

Hall remained at large until he turned himself in on or about June 17, 1986. At his sentencing hearing, Hall revealed that he had telephoned the judge's chambers on June 27, 1985, two days after the jury had returned its verdict. During that conversation, Hall explained to the judge's secretary that he was concerned about facing a lengthy prison term and that he "could not beat the case." Hall's sentence was identical to Hudson's.

## II.

### A.

The sixth amendment of the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution guarantee a criminal defendant "the right * * * to be confronted with the witnesses against him." An essential element of this guarantee is the right of the accused to be present in the courtroom at every stage of the trial. *Illinois v. Allen*, 397 *U.S.* 337, 338, 90 *S.Ct.* 1057, 1058, 25 *L.Ed.*2d 353, 356, *reh'g denied*, 398 *U.S.* 915, 90 *S.Ct.* 1684, 26 *L.Ed.*2d 80 (1970) (citing *Lewis v. United States*, 146 *U.S.* 370, 13 *S.Ct.* 136, 36 *L.Ed.* 1011 (1892)); *State v. Smith*, 29 *N.J.* 561, 578, 150 A.2d 769, *cert. denied*, 361 *U.S.* 861, 80 *S.Ct.* 120, 4 *L.Ed.*2d 103 (1959). The presence of a defendant at his or her own trial is also significant for fourteenth-amendment purposes because the right "is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence * * *." *Snyder v. Massachusetts*, 291 *U.S.* 97, 108, 54 *S.Ct.* 330, 333, 78 *L.Ed.* 674, 679 (1934). Thus, the right to be present, which evolved from the common law, *Wildermuth v. State*, 310 *Md.* 496, 530 A.2d 275 (1987); *Commonwealth v. Felton*, 224 *Pa.Super.* 398, 307 A.2d 51 (1973), *cert. denied*, 415 *U.S.* 984, 94 *S.Ct.* 1577, 39

*L.Ed.*2d 881 (1974), is protected by the federal and state constitutions.

A defendant's right to be present at trial provides protections on both an individual and institutional level. It affords a defendant the ability to communicate with counsel during trial, assist in presentation of a defense, *Illinois v. Allen, supra,* 397 *U.S.* at 344, 90 *S.Ct.* at 1061, 25 *L.Ed.*2d at 359, and in the process of cross-examination. *Douglas v. Alabama,* 380 *U.S.* 415, 418, 85 *S.Ct.* 1074, 1076, 13 *L.Ed.*2d 934, 937 (1965). It includes the independent right of a defendant to represent himself or herself at all stages of a criminal proceeding, if he or she elects to do so. *Faretta v. California,* 422 *U.S.* 806, 95 *S.Ct.* 2525, 45 *L.Ed.*2d 562 (1975). Institutionally, the defendant's right to be present at trial ensures public confidence in the courts as instruments of justice. *United States v. Peterson,* 524 *F.*2d 167, 184 (4th Cir.1975), *cert. denied sub nom. Smith v. United States,* 424 *U.S.* 925, 96 *S.Ct.* 1136, 47 *L.Ed.*2d 334 (1976) (citation and footnote omitted).

The judiciary has been fully protective of a defendant's right to attend every stage of trial. In *Hopt v. Utah,* 110 *U.S.* 574, 4 *S.Ct.* 202, 28 *L.Ed.* 262 (1884), the defendant, facing a capital-murder charge, challenged six jurors during jury selection for bias. The court-appointed "trier" examined the validity of each challenge by removing the proposed juror from the courtroom for questioning. The examination occurred outside the presence of the defendant and his counsel. The Utah Criminal Code of Procedure, however, required that the defendant must be present at trial. The Supreme Court reversed defendant's conviction, rejecting the government's contention that the trial began *after* the jury had been sworn:

> The prisoner is entitled to an impartial jury composed of persons not disqualified by statute, and his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors. The necessities of the defense may not be met by the presence of his counsel only. For every purpose, therefore, involved in the requirement that the defendant shall be personally present at the trial, where the indictment is for a felony, the trial commences at least from the time when

the work of impaneling the jury begins. [*Id.* at 578, 4 *S.Ct.* at 204, 28 *L.Ed.* at 265.]

The Court concluded that the defendant had not waived his right to be present at trial by failing to object to the trial court's challenge procedure:

> The public has an interest in [a defendant's] life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused; much less by his mere failure, when on trial and in custody, to object to unauthorized methods. [*Ibid.*]

Similar protections were provided for a capital-murder defendant in *Lewis v. United States, supra,* 146 *U.S.* 370, 13 *S.Ct.* 136, 36 *L.Ed.* 1011. In *Lewis,* the defendant "was not brought face to face with the jury until after the [jury] challenges had been made and the selected jurors were brought into the box to be sworn." *Id.* at 376, 13 *S.Ct.* at 138, 36 *L.Ed.* at 1014. The Supreme Court reversed the defendant's conviction, holding that the process of challenging jurors was a substantial right of the defendant and an essential part of the trial. *Ibid.* In dicta, the Court emphasized that the right to be present at trial is so fundamental that it cannot be waived:

> A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner. While this rule has, at times, and in the cases of misdemeanors, been somewhat relaxed, yet in felonies, it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be personally present during the trial. [*Id.* at 373, 13 *S.Ct.* at 137, 36 *L.Ed.* at 1012.]

The notion that a trial could never continue in defendant's absence was soon dispelled, however, in a non-capital case. In *Diaz v. United States,* 223 *U.S.* 442, 32 *S.Ct.* 250, 56 *L.Ed.* 500 (1912), the defendant voluntarily absented himself from part of his trial and consented that the direct and cross-examination of two government witnesses could proceed in his absence. Unlike the result in *Hopt* and *Lewis,* however, the Supreme Court concluded that the defendant's presence at every stage of a non-capital trial was not "indispensable":

> [W]here the offense is not capital and the accused is not in custody, the prevailing rule has been, that *if, after the trial has begun in his presence, he*

*voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present,* and leaves the court free to proceed with the trial in like manner and with like effect as if he were present. [*Id.* at 454, 32 *S.Ct.* at 253, 56 *L.Ed.* at 505 (emphasis added) (citations omitted).]

In upholding the defendant's conviction, the Court emphasized the potentially disruptive effect of a rule barring a trial from proceeding whenever a defendant elects not to be present:

It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused *person himself should be pleased to permit it.* * * *

The question is one of broad public policy, whether an accused person, placed upon trial for crime, and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries, and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. [*Id.* at 454–60, 32 *S.Ct.* at 253–56, 56 *L.Ed.* at 506 (quoting *Falk v. United States,* 15 *App.D.C.* 446, 454 (1899), *error dismissed,* 180 *U.S.* 636, 21 *S.Ct.* 922, 45 *L.Ed.* 709 (1901)).]

## B.

The defendant's right to be present at trial and the waiver principle enunciated in *Diaz* were eventually codified in *Rule* 43 of the Federal Rules of Criminal Procedure.[1] New Jersey

---

[1]The Rule, as originally enacted in 1945, permitted a defendant to be tried *in absentia* only in non-capital cases where the defendant had voluntarily absented himself after trial had commenced in his presence. In 1975 the Rule was amended to remove the distinction between capital and non-capital offenses. *State v. Rice,* 110 *Wash.*2d 577, 757 *P.*2d 889, 910 n. 21 (1988), *cert. denied,* —— *U.S.* ——, 109 *S.Ct.* 3200, 105 *L.Ed.*2d 707 (1989). According to the Advisory Committee Notes, the revision was "designed to reflect" *Illinois v. Allen, supra,* 397 *U.S.* 337, 90 *S.Ct.* 1057, 25 *L.Ed.*2d 353. In *Allen,* the Supreme Court held that a defendant can waive the right to be present at trial if he or she acts in a manner so disorderly and disruptive that the trial cannot be continued with the defendant in the courtroom. As amended, *Rule* 43 provides, in relevant part:

(a) The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the

adopted a similar Rule in 1948.[2]   Undoubtedly modeled after its federal counterpart, our Rule has been amended twice [3] but has remained unchanged since 1969.   The current version of the Rule, *Rule* 3:16, provides that "the defendant's voluntary absence *after trial has commenced in his presence* shall not prevent its continuing to and including the return of the verdict." [4]   (Emphasis added.)

The leading New Jersey case considering when a trial "has commenced" is *State v. Lynch,* 177 *N.J.Super.* 107, 425 *A.*2d 696 (App.Div.), *certif. denied,* 87 *N.J.* 347, 434 *A.*2d 92 (1981).

---

return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,

(1) is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial), or

(2) after being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

[2]As originally enacted, *Rule* 2:10–2 provided in relevant part:

The defendant shall be present at the arraignment, at the pretrial conference if any, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules.   In prosecutions for offenses not punishable by death the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict.   * * *

[3]In 1953, *Rule* 2:10–2 became *Rule* 3:5–4, which eliminated the requirement that a defendant be present at any pretrial conferences.   The 1969 revision removed the exception for capital offenses.

[4]A number of other states also rely on trial commencement as the earliest point where a defendant can voluntarily absent himself.   *See, e.g., Cal.Penal Code* § 1043(b) (West 1985);   *Colo.R.Crim.P.* 43(b)(1);   *Fla.R.Crim.P.* 3.180(b) (requiring presence at the beginning of the trial);   *Iowa R.Crim.P.* 25;   *Md.R. Crim.P.* 4–231(c)(1);   *Minn.R.Crim.P.* 26.03(2);   *Mo.R.Crim.P.* 31.03(c);   *Ohio R.Crim.P.* 43(A);   *Tenn.R.Crim.P.* 43(b)(1);   *Wash.Super.Ct.Crim.R.* 3.4(b) (waiver permitted only in non-capital cases);   *Wyo.R.Crim.P.* 42 (same).

In *Lynch,* the defendant appeared in court while the trial judge was asking general questions of fourteen prospective jurors. The court declared a recess for the day after giving preliminary instructions to the jurors but before either party could exercise jury challenges. The defendant failed to appear in court the next day, and trial proceeded in his absence. The Appellate Division affirmed the defendant's conviction and concluded that the trial court had properly exercised its discretion in proceeding without the defendant:

> We are fully content that defendant's presence with counsel when jury panels were summoned for his trial, in itself, satisfies the requirement of *R.* 3:16 that "trial has commenced in his presence." Whether presence at and participation in pretrial procedures would also equate with presence at commencement of trial for this purpose need not be resolved here and we thus reserve that question for another day. Here, defendant remained in the courtroom for some time after the jury panels arrived, during the preliminary interrogation process when fourteen panelists were tentatively seated in the jury box and questioned by the court, until they were all excused for the day. Hence, defendant's voluntary absence thereafter did not prevent continuation as [the trial judge] so aptly ruled. [177 *N.J.Super.* at 112, 425 *A.*2d 696.]

Other cases construing *Rule* 3:16 focus primarily on the significance of a defendant's absence during a portion of the trial. *Cf. State v. Auld,* 2 *N.J.* 426, 67 *A.*2d 175 (1949) (holding that issuance of supplemental instructions to jury in defendant's absence not reversible error); *State v. Hammond,* 231 *N.J.Super.* 535, 555 *A.*2d 1169 (App.Div.) (finding no error where trial court charged jury in defendant's absence), *certif. denied,* 117 *N.J.* 636, 569 *A.*2d 1336 (1989); *State v. Childs,* 204 *N.J.Super.* 639, 499 *A.*2d 1041 (App.Div.1985) (holding that defendant's presence not required when jury sent note to court during deliberations and attorneys discussed ramifications of note with court), *certif. denied,* 104 *N.J.* 430, 517 *A.*2d 423 (1986); *In re Graham,* 13 *N.J.Super.* 449, 80 *A.*2d 641 (App. Div.) (return of verdict while defendant was in jail not reversible error), *certif. denied,* 7 *N.J.* 582, 83 *A.*2d 381 (1951), *cert. denied sub nom. Graham v. Warden, N.J. State Prison,* 342 *U.S.* 930, 72 *S.Ct.* 372, 96 *L.Ed.* 692 (1952).

## C.

Although no New Jersey case has considered whether a defendant's absence *prior* to the commencement of trial affects the validity of the proceedings, the issue has been considered in a number of federal decisions. In *United States v. Peterson, supra*, 524 *F.*2d 167, co-defendant Eric Smith appeared at a pretrial hearing and at his arraignment, where the court informed him of the date, time, and place of trial. On the day before trial, defense counsel again advised the defendant that the trial was to begin the following day. Nonetheless, the defendant failed to appear when the court called his case for trial. In the appeal of his conviction *in absentia*, the defendant's "sole claim [was] that [Federal] Rule 43 establishes his presence at the commencement of the trial as an indispensable prerequisite to the proceedings." *Id.* at 183. Although conceding that "a literal reading of the Rule * * * would lend some support to [defendant's] argument," *ibid.*, the Court of Appeals rejected the defendant's contention and concluded that the holding in *Diaz v. United States, supra*, 223 *U.S.* 442, 32 *S.Ct.* 250, 56 *L.Ed.* 500, concerning when a trial "commenced" was intended to be a narrow one:

> In speaking of a defendant's voluntary absence "after the trial has begun," the *Diaz* Court was referring merely to the factual context in which that particular defendant's voluntary waiver occurred—*i.e.*, after the commencement of his trial. Nothing in *Diaz* should be interpreted as precluding a court from continuing with a trial if the defendant voluntarily waives his presence before the trial commences. * * * We therefore view as consistent with *Lewis* and *Diaz* an interpretation of Rule 43 permitting a defendant's voluntary absence at the commencement of his trial to act as a waiver of his rights to be present. [524 *F.*2d at 184.]

The court based its holding, in part, on *United States v. Tortora*, 464 *F.*2d 1202 (2d Cir.), *cert. denied sub nom. Santoro v. United States*, 409 *U.S.* 1063, 93 *S.Ct.* 554, 34 *L.Ed.*2d 516 (1972). In *Tortora*, co-defendant Samuel Santoro appeared in court when his case was called for trial with 100 potential jurors present. The court granted an adjournment and postponed jury selection, informing Santoro of the new trial date. When Santoro failed to appear on the rescheduled date, the trial

proceeded and the jury convicted him *in absentia.* The Court of Appeals affirmed the defendant's conviction, observing that under certain circumstances a defendant who knows the date of trial can waive the right to be present:

> When a defendant has pleaded to the charges against him and knows that the trial of the charges is to begin on a day certain, the trial may start in his absence if he deliberately absents himself without some sound reason for remaining away. Under the circumstances of this case, Santoro's failure to attend court on [the rescheduled date], when he knew that a jury would be selected and evidence presented, was a knowing and voluntary waiver of his right to be present at trial. [*Id.* at 1208.]

Subsequent applications of the *Tortora/Peterson* waiver rationale demonstrate the federal courts' reliance on notice and their willingness to overcome the literal language of the federal rule. *See, e.g., United States v. Sanchez,* 790 *F.*2d 245 (2d Cir.) (affirming defendant's conviction *in absentia* where defendant present at pretrial conference when trial date set), *cert. denied,* 479 *U.S.* 989, 107 *S.Ct.* 584, 93 *L.Ed.*2d 587 (1986); *Brewer v. Raines,* 670 *F.*2d 117 (9th Cir.1982) (interpreting Arizona law as permitting defendant to waive right to be present before trial commences, provided sufficient notice is given); *Virgin Islands v. Brown,* 507 *F.*2d 186 (3d Cir.1975) (affirming conviction *in absentia* where defendant notified by subpoena of trial date); *United States v. Miller,* 463 *F.*2d 600 (1st Cir.) (affirming conviction *in absentia* where defendant was present when jury selected but not sworn), *cert. denied sub nom. Gregory v. United States,* 409 *U.S.* 956, 93 *S.Ct.* 300, 34 *L.Ed.*2d 225 (1972); *Smith v. Kelly,* 664 *F.Supp.* 131 (S.D.N.Y.1987) (concluding that defendant waived right to be present because court informed defense counsel of trial date); *United States v. Zavala–Serra,* 666 *F.Supp.* 1432 (D.Haw.1987) (trial of defendant who had advance notice of trial date but failed to appear held proper).

Several state decisions reflect similar principles. *See, e.g., State v. Bohn,* 116 *Ariz.* 500, 570 *P.*2d 187 (1977) (affirming conviction because court provided adequate notice of right to be present at arraignment and in bail order); *Turner v. State,* 530

*So.*2d 45 (Fla.1987) (although defendant must know of right to be present at trial, finding harmless error and no fundamental unfairness where defendant not informed of right to participate in *voir dire* conference), *cert. denied,* —— *U.S.* ——, 109 *S.Ct.* 1175, 103 *L.Ed.*2d 237 (1989); *Freeman v. State,* 541 *N.E.*2d 533 (Ind.1989) (trial court properly proceeded with trial *in absentia* because defendant knew trial date); *Barnett v. State,* 307 *Md.* 194, 512 *A.*2d 1071 (1986) (finding no abuse of discretion where defendant present at pretrial hearing, informed by court that jury selection would begin next day, but failed to appear at trial); *State v. Ritch,* 292 *S.C.* 75, 354 *S.E.*2d 909 (1987) (reversing conviction *in absentia* because defendant never received notice of right to be present at trial as required by criminal practice rules); *State v. Kirk,* 699 *S.W.*2d 814 (Tenn. Crim.App.1985) (applying *Tortora/Peterson* holding and affirming conviction *in absentia* where court advised defendant of trial date at pretrial hearing), *cert. denied,* 475 *U.S.* 1023, 106 *S.Ct.* 1215, 89 *L.Ed.*2d 327 (1986); *Sisk v. Commonwealth,* 3 *Va.App.* 459, 350 *S.E.*2d 676 (1986) (recommending that court advise defendant at arraignment of right to be present at trial and that trial will commence in his absence); *State v. La Belle,* 18 *Wash.App.* 380, 568 *P.*2d 808, 818 (1977) (trial may proceed without defendant when accused "receives actual notice of the time, date and place of the trial, deliberately absconds without a compelling reason, is represented by counsel at trial, and never offers a satisfactory explanation for his absence"). *Compare People v. Sanchez,* 65 *N.Y.*2d 436, 482 *N.E.*2d 56, 492 *N.Y.S.*2d 577 (1985) (concluding that defendant who knows that trial will continue in his absence but absconds after trial has begun forfeits right to be present) *with People v. Parker,* 57 *N.Y.*2d 136, 440 *N.E.*2d 1313, 454 *N.Y.S.*2d 967 (1982) (defendant who knew date of trial but not warned about consequences of non-appearance does not waive right to be present after voluntarily failing to appear).

These decisions present a common theme, generally permitting a court to infer that a defendant waives the right to be

present at trial if he or she fails to appear after having received adequate notice of the date, time, and place of trial, and of the right to be present. Some courts, however, weigh other factors in determining whether a trial conducted without the defendant results in a valid conviction. *United States v. Tortora, supra,* 464 *F.*2d 1202, for example, requires that before a trial can proceed without the defendant, the court must perform a more probing inquiry, weighing the interests of the state and the criminal-justice system against the defendant's right to be present at trial:

> We do not here lay down a general rule that, in every case in which the defendant is voluntarily absent at the empanelment of the jury and the taking of evidence, the trial judge should proceed with the trial. We only hold that this is within the discretion of the trial judge, to be utilized only in circumstances as extraordinary as those before us. Indeed, we would add that this discretion should be exercised only when the public interest clearly outweighs that of the voluntarily absent defendant. Whether the trial will proceed will depend upon the trial judge's determination of a complex of issues. He must weigh the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, again particularly in multiple-defendant trials where the evidence against the defendants is often overlapping and more than one trial might keep the Government's witnesses in substantial jeopardy. [*Id.* at 1210 (footnote omitted).]

Other federal courts have adopted a standard similar to the *Tortora* "complex of issues" balancing test. *See, e.g., United States v. Rogers,* 853 *F.*2d 249 (4th Cir.) (finding an abuse of discretion when court proceeded without further investigation, but concluding that error was harmless), *cert. denied,* 488 *U.S.* 946, 109 *S.Ct.* 375, 102 *L.Ed.*2d 364 (1988); *United States v. Sanchez, supra,* 790 *F.*2d at 251 (noting broad discretion afforded trial courts "in determining whether to proceed with a trial *in absentia,* [ ] to adjourn, or to sever"); *United States v. Muzevsky,* 760 *F.*2d 83 (4th Cir.1985) (finding no *per se* rule that single-defendant trials cannot proceed without the defendant); *United States v. Beltran–Nunez,* 716 *F.*2d 287 (5th Cir.1983) (vacating defendant's conviction because trial court proceeded without performing further balancing); *United States v. Benavides,* 596 *F.*2d 137 (5th Cir.1979) (reversing

conviction for drug possession where court abused discretion by proceeding with trial *in absentia* without inquiring into rescheduling); *United States v. Pastor*, 557 *F.*2d 930 (2d Cir. 1977) (observing that trial court is in superior position to determine whether to proceed in defendant's absence); *United States v. Peterson, supra,* 524 *F.*2d 167 (affirming conviction *in absentia* in multi-defendant case where burden on government to conduct two trials clearly outweighed that of voluntarily absent defendant); *Campbell v. United States,* 295 *A.*2d 498 (D.C.1972) (finding abuse of discretion in proceeding without defendant in single-count information case that reached trial within two months, lasted one day, and required three witnesses). *But see State v. Drakeford,* 202 *Conn.* 75, 519 *A.*2d 1194 (1987) (declining to adopt *Tortora* balancing test).

### III.

#### A.

■ In its present form, *Rule* 3:16 distinguishes between a defendant absent before trial has begun, and one who leaves the trial after commencement of the proceedings. Defendants rely on the "plain meaning" of the Rule to support their contention that because they absented themselves before their trial commenced, their convictions must be vacated.

We see no principled reason to distinguish "between the misconduct of a defendant who deliberately leaves the courtroom shortly after the trial begins and that of a defendant who does so after he has been told that the trial is about to begin." *People v. Sanchez, supra,* 65 *N.Y.*2d at 444, 482 *N.E.*2d at 60, 492 *N.Y.S.*2d at 581. In either case, the absence indicates a defiance of the judicial system and can lead to a severe disruption of the criminal calendar. *Ibid.* Thus, a literal construction of *Rule* 3:16 would permit a defendant to postpone his criminal trial simply by leaving the courtroom before trial starts. We are certain that *Rule* 3:16 was never intended to vest in defendants the power to decide whether trial should proceed as

scheduled. Accordingly, we construe *Rule* 3:16 in a manner consistent with the prevailing case law, see *supra* at 177–180, and hold that a defendant's knowing, voluntary, and unjustified absence before or after trial has commenced does not prevent trial from proceeding *in absentia.*

■ An additional concern posed by the current Rule involves the notice required to sustain a defendant's waiver of the right to be present at trial. Adequate notice to the defendant is an essential element of a knowing waiver of the right to attend trial. *See Brookhart v. Janis,* 384 *U.S.* 1, 4, 86 *S.Ct.* 1245, 1247, 16 *L.Ed.*2d 314, 317 (1966). The current version of *Rule* 3:16 does not require that the court provide notice of that right to a defendant. Nevertheless, a defendant is usually informed of the date and time of trial. Typically, defense counsel confers with the client, discusses trial strategy, and informs defendant when the trial will begin.

We believe that a more formal method of notification is appropriate. The best opportunity to provide such notice is at the arraignment, where a defendant is informed of other significant protections, such as the right to counsel. Accordingly, the criminal-practice rules should be amended to require that trial courts inform a criminal defendant at the arraignment of the right to be present at trial and the consequences of the failure to appear. As noted above, Rule 3:16 should also be amended to eliminate the distinction between defendants who elect to leave the trial after it commences and those who waive the right to be present before the trial begins. Accordingly, we refer *Rule* 3:16 to the Criminal Practice Committee, which should promptly consider and recommend modifications of the Rule consistent with this opinion.

### B.

■■ Although these defendants may not have been informed at their arraignment of the right to be present at trial, that omission does not equate with a lack of knowledge of that

right. The clearest evidence of such knowledge is the defendants' presence in court on the day the matter was set for trial. Both Hudson and Hall appeared in court during the morning of the scheduled trial and were told by their attorneys to be present at 1:30 p.m. Significantly, neither defendant claims that he was uninformed about when his trial would begin. *Cf. City of Plainfield v. Phillips*, 38 *N.J.Super.* 260, 264, 118 *A.*2d 704 (App.Div.1955) (reversing conviction *in absentia* where there was "the reasonable inference that the defendant was unaware of the time designated for his trial"). In fact, Hudson explained that he absented himself because he was "shaken up." Similarly, Hall attempted to justify his absence based on his fear of incarceration and the likelihood of conviction. We find ample support in the record for the trial court's conclusion that defendants knowingly and voluntarily waived their right to be present at trial and that their absence was inexcusable.

We acknowledge that the trial court in this case did not adhere to the prevailing practice in some jurisdictions of "balancing" the various factors that bear on the discretionary decision to proceed with or adjourn the trial. *See supra* at 180 –181. It is entirely appropriate for a trial court, confronted with an inexcusably-absent defendant, to consider the ease of rescheduling, the availability of witnesses and counsel, and the effect on the court's calendar, *inter alia,* in deciding whether to proceed with trial. But while those factors are pertinent, we decline to adopt a rule mandating their evaluation as a condition of a court's exercise of discretion in such cases. We hold that a defendant's inexcusable absence from trial, under circumstances demonstrating knowledge of the time and place of trial, the right to be present, and that the trial may proceed if defendant is absent, constitutes a sufficient basis for a trial court's decision to proceed. We cannot allow crowded court calendars to be disrupted by defendants who knowingly and voluntarily absent themselves from trial, and then seek reversal of their convictions on the ground that the trial date could conveniently have been rescheduled. Thus, a trial court confronted with an

absent defendant may consider the ease of rescheduling the trial, but an informed and inexcusable absence is itself sufficient to justify denial of an adjournment.

We are satisfied that the record below is sufficient to sustain the trial court's decision to proceed with trial. The case had already been adjourned once. The State's witnesses, including the three victims, were available to testify. Defendants themselves appeared in court on the morning of the scheduled trial, indicating their readiness and willingness to participate in the proceedings. The trial court observed that defendants had been in court earlier that day, had not been excused, and knew that their cases were scheduled for trial, and concluded that they had "absented themselves voluntarily from the proceedings." Defendants' post-trial explanations of their absence confirm that their departure was purposeful and inexcusable. Although there was no explicit evidence that these defendants knew that the trial would proceed in their absence, we find no abuse of discretion in the trial court's decision to deny counsel's request to adjourn the trial.

Judgment reversed.

*For reversal* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance* —None.